Jones, Chief Judge,
delivered the opinion of the court:
This case involves the loss of payroll funds.
Plaintiff began active duty as a First Lieutenant in the Army Eeserve on June 12,1941, and was separated from the service on May 26, 1946, at which time he was a Lieutenant Colonel, having received promotions in rank during his service.
During the period involved in this action plaintiff also served by appointment as a Class “A” agent finance officer in the area of Corozal, Panama Canal Zone.
To expedite delivery of Government funds station finance offices were located throughout the area which consisted of Corozal, Tivoli, Quarry Heights, Albrook Field, and adj acent vicinities.
The chief disbursing officer for the entire area was Major Roy Silverman, F. D. He supervised and maintained the main finance office at Corozal. All the agent finance officers of that area, including the plaintiff, were accountable to him for funds entrusted to them.
On November 24,1941, plaintiff was detailed as a Class “A” agent officer for the purpose of making payroll payments to civilian employees of the Tivoli office, and was made responsible for the proper distribution of funds received by him.
These agent officers were required by regulation to account for funds within a 24-hour period after they were received. They were fully advised that as agents they assumed the responsibility for the proper care, custody, and distribution of such funds. A receipt was executed by the agent officer in which he stated that he assumed responsibility for the funds entrusted to him. Upon return of payroll receipts evidencing the disbursement of funds, or redelivery of any part that had not been disbursed, the trust receipt was returned to the agent officer.
During the period when the issues of this case arose plaintiff was paymaster and labor relations officer for the Tivoli office. He had various other duties and was in charge of civilian quarters. He occupied an office about 30 feet long *173 ^nd 15 feet wide located at the end of a wing of an H-sbaped building which ,was used as headquarters for the construction ■division.
Plaintiff’s quarters had the usual office furniture and in addition contained a cashier’s window and one file cabinet ■equipped with a lock. Plaintiff had two civilian employees working under his direction. An intelligence officer whose duties were entirely unrelated occupied a desk at the other ■end of the room.
Plaintiff as a rule personally disbursed the payroll funds to men employed on construction projects under the Tivoli office. At times when it was necessary for him to be away from the office and he knew that certain workmen would call for their pay during such absence he left the pay envelopes for such workmen in the locked file cabinet' and instructed ’his stenographer, to whom he turned over the key, to pay such workmen as might call for their money.
Payrolls so received and disbursed related only to the Tivoli office to which plaintiff was assigned as paymaster and for which he was designated as agent officer.
On or about February 13, 1942, the agent officer for the Corozal office, who was responsible for disbursing the payroll on Project No. Eng. 134, requested plaintiff as an accommodation to such agent officer for the Corozal office to pick up the pay envelopes of four workmen to whom pay was due for work performed on Project No. Eng. 134. These workmen had been transferred to a project near the Tivoli ■office but were not assigned to any construction project for which plaintiff was performing the duties of paymaster. Plaintiff accepted the four pay envelopes containing $741.03 in cash from the other agent officer and gave a receipt for this amount. He agreed to hand them to a Captain Forde ■from whom he would secure a receipt, and Captain Forde was to pay the foto workmen.
Plaintiff took the four pay envelopes to his office at 8: 00 •o’clock on the morning of February 13, 1942. Some two hours later he received a telephone call from a superior’s office directing that he report to the dispensary for a blood test. He left his office hurriedly to comply with this directive. He left the four pay envelopes on his desk with a *174 sheet of white letter-size paper wrapped around them secured with a paper clip. At the time two civilian clerks were working in the oíñce. The intelligence officer regularly employed in the office was at the other end of the office. A carpenter was working on the screens and louvres of the window immediately behind plaintiffs desk. Plaintiff did not tell any of the employees in the office that he was leaving the pay envelopes on his desk and he gave no instructions to anyone concerning the safeguarding, protection, or delivery of the money contained therein. He returned to the office shortly after 11:00 o’clock and found that the pay envelopes were not on the desk, although the sheet of letter-size paper which had been wrapped around them was still on the desk. He inquired of his two civilian employees and was informed that neither had seen the envelopes, nor did' either have any knowledge that any envelopes containing money had been left on the desk by plaintiff. The loss was reported to plaintiff’s superior officer and to the Military Police. They were unable to locate the funds.
Soon thereafter plaintiff advised Major Silverman, the finance officer for the area, about the receipt and loss of the funds. Plaintiff was reminded that he was responsible for Government funds entrusted to him; that since he had signed for these pay envelopes, although they were not designated' as a part of the payroll for his office, he had assumed responsibility for their safety. Major Silverman also advised him that if the money was not accounted for it would be necessary to call for the appointment of a Board of Officers to investigate and fix responsibility for the loss; that if plaintiff made good the funds, he could then request his Commanding Officer, General Danielson, to call for a Board of Officers to investigate the loss and recommend reimbursement.
Major Silverman did not advise plaintiff which course he should pursue, but gave it as his personal opinion that if a Board of Officers were called it would find plaintiff responsible for the loss, since he could see no circumstances which would justify plaintiff’s carelessness in having left the funds unprotected. Plaintiff thereupon replaced the lost funds with his personal funds. No shortage was reflected in the trust account of either the plaintiff or the agent officer at, *175 Corozal. Major Silverman made no request for the appointment of a Board of Inquiry since no shortage appeared in the accounts of any of his agent officers. Plaintiff made no request to his Commanding Officer for the appointment of a Board of Inquiry to investigate the loss and make findings until about four years later.
On April 23,1946, plaintiff addressed a letter to the Army Central Adjustment Office at St. Louis, Missouri, reporting the loss and requesting information relative to the procedure in submitting an official claim for reimbursement, and on the following September 13 addressed a letter to the War Department, Judge Advocate General’s Office, Claims Division,, enclosing a copy of his letter of April 23,1946.
Soon thereafter plaintiff was advised that an investigation would be made through War Department channels. On February 25, 1947, plaintiff was advised by the Receipt» and Disbursements Division, Washington, D. C., that an investigation had been instituted but that information received, from the field offices was insufficient to justify convening a Board of Officers to investigate and report on the alleged loss. He was, however, advised that if he could furnish additional information such a board would be appointed. Plaintiff furnished some additional information and on April 16,1947, a Board of Officers convened to investigate the loss. The Board found that plaintiff was responsible for the loss and recommended that the claim for reimbursement be denied.
This report of the Board was approved by the convening[1] authority on June 16,1947.
Under army regulations a Board of Officers was appointed in the Office of the Chief of Finance, Washington, D. C.. This Board had before it the proceedings of the local Board of Officers which had investigated the matter, the claim and exhibits submitted by the claimant, the report made by the-Military Police at the time the loss occurred, and recommendations from the Finance Department. On July 10,, 1947, the Board found that the plaintiff was negligent in the handling of the funds and recommended to the Chief of Finance that he recommend to the Secretary of War that the plaintiff be held responsible and that no relief should be? *176 granted on Ms claim. The recommendation was referred to the Judge Advocate General and was concurred in by'him on September 25, 1947. Thereupon the Secretary of the Army issued a directive denying the claim. Plaintiff was advised of the action taken on October 3,1947.
Under Title 28 U. S. G, Sections 250 (3) and 258[1] this court was granted jurisdiction, among other things, to hear and determine the claim of any disbursing officer for relief from responsibility on account of loss, while in the line of duty, of Government funds, vouchers, records or papers in his charge, for which such officer had been held responsible. Section 253 of Title 28, U. S. C.., which was applicable at the time the issues herein involved arose, read as follows:
Decree on accounts of disbursing officers. — Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, or other disbursing officer, in the cases hereinbefore provided, to have been without fault or negligence on the part of such officer, it shall make a decree setting forth the amount thereof, and upon such decree the General Accounting Office shall allow to such officer the amount so decreed as a credit in the settlement of his accounts.
In the circumstances of this case we do not see how we can escape the conclusion that plaintiff failed to exercise the care in the handling of these funds that an ordinarily prudent man would have exercised under the same or similar circumstances. We therefore conclude that he was negligent and cannot recover.
At the threshold we are met with a serious question of plaintiff’s right to maintain suit in this court.
There is considerable doubt whether plaintiff could recover directly from the Government even though he had not been negligent, since he was not officially entrusted with these funds, but had acted as an accommodation to one of his brother officers. Evidently the plaintiff made good the loss from his own personal funds in order to protect the other agent from whom he had accepted the funds as an accommo *177 dation. It seems that in these circumstances the Corozal officer is the one who would have been responsible to the Government, the one who would have been entitled to recover had there been no negligence. Wright v. United States, 77 U. S. 731. However, it is not necessary to rest the case upon this issue, since whichever horn of the dilemma is taken there was negligence in the handling of the funds, and even though the action had been brought by the finance officer to whom the Government had entrusted the funds he would have been charged with responsibility for the action taken by one to whom he had delegated his duties without specific authority for such delegation.
Coming back to the question of the action of the plaintiff : he had a steel file cabinet in his office in which he could have locked the funds; he also had a desk. It is true that he had therefore requested a safe for his office. Two safes were available about one hundred feet away in another office in the same building. That plaintiff left these funds in envelopes on the top of his desk when a number of people had access to the office, including a carpenter who was working on the windows just behind his desk, and without saying anything to either of the employees immediately under his supervision, and without taking any of the steps usually taken for the protection of such funds, precludes us from reaching any other reasonable conclusion than that plaintiff was negligent in the handling of these funds. He therefore cannot recover. The petition is dismissed.
Howell, Judge; Maddest, Judge/ Whitakejk, Judge; and Littleton, Judge, concur.

 Title 28 was revised, effective September 1, 1948, these sections becoming Sections 1496 and 2512, respectively. The law is not changed materially..